# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| Christen Hoedt, M.D. | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | No. 3:24-CV-00310 |
| | ) | |
| Vanderbilt University, Vanderbilt University | ) | Judge Crenshaw |
| Medical Center, Vanderbilt University | ) | Magistrate Judge Frensley |
| Medical Center d/b/a Vanderbilt Wilson | ) | (A Jury Trial is Requested) |
| County Hospital, Rick W. Wright, M.D., | ) | |
| Gregory G. Polkowski, M.D., the United | ) | |
| States Department of Health and Human | ) | |
| Services, and Xavier Becerra, in his official | ) | |
| Capacity as Secretary, United States | ) | |
| Department of Health and Human Services | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

### INTRODUCTORY PARAGRAPH

Dr. Christen Hoedt ("Dr. Hoedt") is a fellowship-trained orthopaedic surgeon specializing in joint replacement. He was trained at the University of Pennsylvania, a very prestigious joint replacement fellowship. He entered into an employment contract with Vanderbilt University ("VU") and Vanderbilt University Medical Center ("VUMC"), with one of his principal job responsibilities being performing orthopaedic surgical procedures at Vanderbilt Wilson County Hospital ("VWCH" or "Hospital"), a wholly owned subsidiary of Vanderbilt University Medical Center. This action involves the interference by VUMC through members of its Department of Orthopaedic Surgery through false and malicious statements to the medical staff at VWCH that led to the summary suspension of Dr. Hoedt's privileges at VWCH and the Hospital's medical staff through its Medical Executive Committee voting to have his privileges permanently revoked.

The actions taken against Dr. Hoedt, primarily through the Chief of the Department of Othopaedic Surgery at VUMC, Dr. Rick Wright ("Wright"), and the Vice-Chair of the Department, Dr. Gregory Polkowski ("Polkowski"), were designed to manufacture a reason to terminate Dr. Hoedt's employment contract. The contract contained a clause allowing its termination should Dr. Hoedt lose his privileges at VWCH. Dr. Hoedt contested the recommended adverse actions taken against him by the medical staff at VWCH through the actions of Drs. Wright and Polkowski on behalf of VUMC. Dr. Hoedt also pursued his rights under VU's Faculty Manual by filing a grievance against Wright, Polkowski, and the VUMC Department of Orthopaedic Surgery about the actions being taken against him in violation of his employment contract and the violations of the VU policies that were occurring. His grievance was ignored. Eventually a Settlement Agreement calling for proctoring occurred that in turn led to the reinstatement of Dr. Hoedt's privileges at VWCH. This action involves the breach of that Settlement Agreement by VUMC and VWCH's failure to properly follow the guidelines and regulations of the National Practitioner Databank that have resulted in false and defamatory statements inhibiting Dr. Hoedt's efforts to find employment. This proceeding seeks a declaratory judgment as to the breach of the Settlement Agreement, VU/VUMC's breach of his Employment Agreement and the requirement that the National Practitioner Databank reports submitted by VUMC through its solely owned subsidiary, VWCH, be voided. A mandatory injunction is being sought ordering VUMC d/b/a VWCH to void these reports as required by the regulations promulgated under federal law by the Department of Health and Human Services which operates the National Practitioner Databank ("NPDB"). Dr. Hoedt brings this action under the Administrative Procedure Act ("APA") to challenge the United States Department of Health and Human Services ("HHS") unlawful refusal to remove these reports, as required by the National Practitioner Databank Regulations and Guidelines through the

2

administrative remedies afforded by those Regulations and Guidelines. Dr. Hoedt also seeks money damages for VU/VUMC's breach of his employment agreement and VUMC's breach of the Settlement Agreement, punitive damages and reasonable attorney's fees that he has incurred that are allowed pursuant to the Settlement Agreement.

**THE PARTIES**

1. The Plaintiff, Christen Hoedt, M.D., is a medical doctor licensed to practice in the states of Tennessee, Ohio, Pennsylvania, and North Carolina and is currently a resident of Greeneville, North Carolina.

2. The Defendant Vanderbilt University ("VU") is a non-profit corporation with its principal place of business at 2100 West End Avenue, Suite 750, Nashville, TN 37203-5233. VU operates a medical school where Dr. Hoedt was a faculty member.

3. The Defendant Vanderbilt University Medical Center (VUMC) is a Tennessee Corporation with its principal place of business in Nashville, Tennessee. The Tennessee Secretary of State lists VUMC's principal office as 1161 21st Avenue South, Medical Center North D-3300, Nashville, TN 37232-5545 and its mailing address as 3322 West End Avenue, Suite 1100, Nashville, TN 37203-1000.

4. Wright and Polkowski are residents of Tennessee and can be served with process at the VUMC Department of Orthopaedic Surgery.

5. Vanderbilt Wilson County Hospital is a wholly owned subsidiary of VUMC and operates a hospital licensed by the State of Tennessee in Lebanon, Tennessee.

6. Defendant United States Department of Health and Human Services ("HHS") is a federal agency headquartered in Washington, D.C., at 200 Independence Avenue, S.W.

3

Washington, D.C., 20201. HHS is an "agency" within the meaning of the of the APA. 5 U.S.C. § 701(b)(1).

7.      Defendant Xavier Becerra is sued in his official capacity as the U.S. Secretary of Health and Human Services. His official address is 200 Independence Avenue, S.W., Washington, D.C. 20201.

## JURISDICTION AND VENUE

8.      Dr. Hoedt is an individual citizen of the State of North Carolina.

9.      Defendants, other than HHS, are either corporations incorporated under the laws of, and with principal places of business in, the State of Tennessee or individual citizens of the State of Tennessee.

10.      Dr. Hoedt's claims involve matters in controversy which exceed $75,000 exclusive of interests and costs.

11.      All Defendants, except HHS and Xavier Becerra, reside in the State of Tennessee, and one or more Defendants reside in this Court's federal judicial district.

12.      A substantial part of the events giving rise to Dr. Hoedt's claims occurred in this Court's federal judicial district.

13.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332.

14.      This Court has authority to grant the requested relief in this case pursuant to the APA, 5 U.S.C. § 706, and the Declaratory Judgement Act, 28 U.S.C. §§ 2201-2202.

15.      Venue is proper in this Court under 28 U.S.C. § 1391.

## BACKGROUND FACTS

16.      Dr. Hoedt is a fellowship-trained orthopaedic surgeon specializing in joint replacements, having attended his fellowship at the University of Pennsylvania. The joint replacement fellowship at the University of Pennsylvania is respected throughout the country and accredited by the ACGME (https://apps.acgme.org/ads/Public/Reports/ReportRun) although many similar fellowships are not (https://fellowship.aahks.net/).

17.     Dr. Hoedt was recruited by VU/VUMC for the purpose of his performing the practice of orthopaedic surgery at its recently acquired hospital in Lebanon, Tennessee, which was renamed Vanderbilt Wilson County Hospital. Attached to the original Complaint as Exhibit 1 is the contract Dr. Hoedt entered into with Vanderbilt University and Vanderbilt University Medical Center dated January 15, 2021, and accepted by Dr. Hoedt on January 25, 2021. As reflected in this contract Dr. Hoedt was to serve a two-year term beginning July 1, 2021, as a member of the faculty in the Department of Orthopaedic Surgery and School of Medicine at Vanderbilt University and as an employed physician with the Vanderbilt University Medical Center. The Chairman of the Department of Orthopaedic Surgery at VUMC was Wright and the Vice-Chairman and head of the division of adult reconstructive surgery was Polkowski. Polkowski was Dr. Hoedt's immediate supervisor.

18.     Vanderbilt Wilson County Hospital had recently been acquired by Vanderbilt University Medical Center after having operated many years under a previous corporate identity. The staff, physicians and medical personnel resented VUMC for taking over the operation of the hospital, making changes and bringing in new physicians. Dr. Hoedt was literally thrown into this toxic culture when he in essence replaced a long-time member of the staff who had been performing most of the orthopaedic procedures that Dr. Hoedt was supposed to be performing. This toxic environment was well known by Drs. Wright and Polkowski and they initially told Dr. Hoedt that "we have your back."

19.     Shortly after starting to work under his Employment Agreement Dr. Polkowski approached Dr. Hoedt and requested that he use a certain device manufacturer named DJO for knee, hip, and shoulder joint replacements. These devices were sold to VUMC and to VWCH through a manufacturer's representative with whom Dr. Polkowski had a relationship that allowed

him to receive compensation in the form of consulting fees and royalties when DJO devices were used in the surgeries he performed. The exact relationship Dr. Polkowski and others in the VUMC Department of Orthopaedic Surgery had with this manufacturer's representative is not known, but Dr. Hoedt was pressured to use these devices, with Dr. Polkowski stating that while he could not force him to use the devices that if he "wanted to be a team player," he would.

20.     At the urging of Dr. Polkowski, Dr. Hoedt performed some surgeries using DJO devices, which he had not used before in his training. He found that he did not get the results he desired and the results he had experienced using other devices. Further, Dr. Hoedt experienced the lavish entertainment and gifts provided by this manufacturer's representative to Dr. Polkowski and others in the department, which Dr. Hoedt rejected because he felt it was probably illegal, in violation of VU's policies, and certainly unseemly. After rejecting the gifts and entertainment offered by the manufacturer's representative, Dr. Hoedt made it clear to that manufacturer's representative that he would no longer be using any DJO devices. This occurred in late January of 2022. Shortly after that communication with the DJO representative, Dr. Hoedt was informed by personnel at VWCH that a threat was made by the representative that if Dr. Hoedt did not use DJO devices then "he will not be around very long."

21.     Within several days of Dr. Hoedt's informing the DJO representative that he would no longer be using those devices, he was contacted by Dr. Polkowski to attend a meeting with Drs. Polkowski and Wright, which meeting occurred on February 22, 2022, in Dr. Wright's office. Even though Dr. Hoedt had been practicing since June of the previous year and had performed numerous surgeries, Drs. Wright and Polkowski told him for the first time that his surgical abilities were wanting and that they would not be renewing his VU/VUMC contract during the meeting. At that time, he had a year and four months left on the term of the contract. Other than telling him that his

complication and infection rate was too high, neither Wright nor Polkowski would tell him how his surgical techniques were in any way deficient, advising him that that conversation could occur at another time. At no time had Dr. Polkowski ever witnessed Dr. Hoedt's surgical technique despite Dr. Hoedt's multiple requests for him to "scrub in" with him on surgical procedures.

22.     After the February 22, 2022, meeting Dr. Polkowski began pressuring Dr. Hoedt to terminate his VU/VUMC contract and find employment elsewhere, to which Dr. Hoedt responded that he thought he had more time given the contract did not expire until July 1, 2023. Moreover, for Dr. Hoedt to have terminated the contract per Dr. Polkowski's insistence, he would have had to repay VU/VUMC his $50,000 signing bonus.

23.     Within Dr. Hoedt's contract is a provision that if he ever lost his privileges at VWCH, then VU/VUMC had the option to terminate his contract for cause. On March 17, 2022, Dr. Hoedt was informed by the VWCH Chief of Staff that his privileges at the hospital were summarily suspended due to the unexpected death of one of his patients that had occurred on March 16, 2022. No formal peer review was conducted as to the death of Dr. Hoedt's patient, and at the time of her death the patient was under the care of the hospital-employed hospitalist. A summary suspension under the hospital's bylaws could only be imposed if there is an imminent danger to patient safety due to the practice of a physician. The summary suspension occurred as a result of the accusations of Dr. Wright as VUMC's Chair of the Department of Othopaedic Surgery.

24.     Dr. Wright was directly involved and in fact caused the summary suspension imposed by the Medical Executive Committee (MEC) of VWCH. He grossly misrepresented the standard of care that he alleged Dr. Hoedt to have violated in connection with his operative procedure on the patient in question and also grossly misrepresented the medicine in asserting that Dr. Hoedt's surgery had any causal connection with the death of the patient.

25.     Dr. Hoedt was informed by the Chief of Staff of VWCH that his use of hydrogen peroxide to clean the wound on March 14, 2022, was deemed a gross deviation from the standard of care by Dr. Wright. In response to that statement Dr. Hoedt performed a literature search and produced an extensive list of literature that revealed just the opposite. The use of hydrogen peroxide in cleansing wounds for possible infection following joint replacement surgery was recognized across the country in a variety of peer reviewed literature. Further, Dr. Hoedt informed the Chief of Staff and the Medical Executive Committee that there is no way his operative procedure could have had any relationship to the patient's death that occurred two days later. Dr. Hoedt's request for an independent evaluation was rejected.

26.     As orchestrated by Dr. Wright, the Medical Executive Committee of VWCH upheld the summary suspension and also voted to recommend the total revocation of Dr. Hoedt's hospital privileges, vaguely citing inordinate complications and infection rates. The notification letter to Dr. Hoedt stated that VUMC had unsuccessfully attempted to remediate Dr. Hoedt's surgical skills that had led to these complications and infection rates, which was false. VUMC never did anything to remediate Dr. Hoedt, assuming he needed remediation, with Drs. Wright and Polkowski refusing to even tell him how his surgical skills were in some way substandard in their February 22, 2022, meeting. Nothing was done to follow up on that meeting and the next thing that happened was Wright and Polkowski's pressuring of Dr. Hoedt to resign followed by the summary suspension of Dr. Hoedt's privileges orchestrated by Dr. Wright. Drs. Wright and/or Polkowski intentionally misrepresented that remediation efforts had been made by VUMC in order to get the Medical Executive Committee of VWCH to vote to recommend the revocation of Dr. Hoedt's privileges.

27.     Dr. Hoedt immediately exercised his right to a hearing under the hospital's bylaws and through his attorney informed the attorney for VUMC and VWCH that he was willing to undergo a proctoring arrangement to demonstrate his competency.

28.     Due to an illness in the family of VUMC's in-house counsel and the retention by VUMC/VWCH of outside counsel from Austin, Texas, VUMC/VWCH requested a mediation to try to resolve the pending disputes to avoid a hearing. Texas counsel recommended a mediator to which Dr. Hoedt agreed. Before agreeing to the mediation Dr. Hoedt's counsel made it clear to VUMC's Texas counsel and its in house counsel that no mediation would be agreed upon if the VUMC/VWCH was going to insist upon Dr. Hoedt's resignation of his privileges in the face of an investigation. Dr. Hoedt reiterated his request to resolve the dispute through proctoring, a procedure recognized by the hospital's bylaws. Those terms were agreed upon and the mediation occurred on June 21, 2022. In bad faith and in violation of the agreed terms of the mediation, VUMC/VWCH insisted that Dr. Hoedt resign his privileges at VWCH and the only thing that could be negotiated would be the terms of the required National Practitioner Data Bank report. Dr. Hoedt was given until June 28, 2022, to accept or reject that offer. Upon information belief, the June 28th deadline was so that if Dr. Hoedt did resign his privileges by that date, VU/VUMC could terminate his contract prior to the beginning of the next fiscal year because of the clause in the contract allowing termination if Dr. Hoedt lost his hospital privileges at VWCH. Dr. Hoedt rejected the offer and insisted upon a hearing and compliance with the bylaws.

29.     The bylaws of VWCH required a formal notice of charges within thirty days following Dr. Hoedt's request for a hearing. Dr. Hoedt's request for that hearing was made on April 1, 2022, but hospital's counsel did not provide him the notice of charges until July 29, 2022, and would not set the requested hearing until September 13, 2022.

30.     Pursuant to the VWCH bylaws, Dr. Hoedt disclosed experts to testify at the hearing. One was a nationally renowned orthopaedic surgeon specializing in joint replacements and revisions and the other was a local orthopaedic surgeon who was a senior partner in the largest orthopaedic group in Nashville, who specializes in joint replacement and sports medicine. The only experts available to VUMC/VWCH to testify about the medical issues that led to Dr. Hoedt's summary suspension and the vote to revoke his privileges were Drs. Wright and Polkowski. It would have been Dr. Wright's task to justify his medical advice about the use of Hydrogen Peroxide and its role in the death of the patient that started the whole peer review with the summary suspension. Since the hearing officer selected by VUMC/VWCH, who was also from Austin, Texas, was going to require Drs. Wright and Polkowski to testify under oath at the hearing, these doctors were facing a serious dilemma.

31.     To avoid a Hearing VUMC/VWCH agreed to a proctoring arrangement after reengaging the mediator, which had been suggested by Dr. Hoedt in March of 2022 and rejected by VUMC/VWCH at the June 21, 2022, mediation. A Settlement Agreement that was drafted by counsel for VUMC was entered into that is attached to the original Complaint as Exhibit 2.

32.     The actions of VUMC, primarily through Wright and Polkowski, put Dr. Hoedt in a precarious situation with respect to his career for which he had spent years in training having successfully completed a respected fellowship at the University of Pennsylvania. He was faced with a permanent revocation of his hospital privileges at VWCH and was about to embark upon an expensive hearing under the VWCH By-Laws where he was required to prove by "substantial evidence" that the decision of the Hospital's Medical Executive Committee was unreasonable and should not be followed. The Hospital during this process was represented by counsel from Austin, Texas that had been selected by VUMC who in turn selected the hearing officer under the

Hospital's By-Laws who was likewise from Austin, Texas, and a colleague of VUMC's Austin, Texas counsel within the Austin, Texas Bar. A Medical Review Committee was unilaterally selected by VUMC. While the Hospital's By-Laws did allow for Dr. Hoedt to object to the hearing officer and those selected for the Medical Review Committee, his objections in this regard were summarily denied. Thus, he was faced with a hearing before a panel and a hearing officer chosen by his adversary. Even if he prevailed at the hearing, there was no guarantee that the governing body under the By-Laws, namely, the Board of Trusts of the Hospital, that was appointed and controlled by VUMC, would accept the hearing panel's decision.

33.    VUMC had already attempted to obtain a release from Dr. Hoedt of any potential claim arising from the VWCH peer review in exchange for Wright talking to Dr. Hoedt's prospective employer at The Ohio State University Medical School. It was VUMC's strategy all along to obtain such a release in addition to removing Dr. Hoedt from his employment with VUMC and his faculty position with VU.

34.    Shortly before the scheduled hearing it was agreed by VUMC through its Texas counsel to reengage the mediator and finally agree upon the concept of a proctoring arrangement for Dr. Hoedt to demonstrate his technical skills. This was a process recognized by the Hospital's By-Laws and a process that had been offered by Dr. Hoedt from the very beginning of the peer review instigated by VUMC against him. Thus, Dr. Hoedt was under extreme economic and professional duress to avoid a hearing that had all the markings of futility, accept VUMC's proposal, and agree to a release. In doing so he took a chance that VUMC would not properly conduct a proctoring arrangement, but because he was allowed to choose his proctors, and being confident in his abilities, he agreed. He also agreed to resign his privileges at VWCH at the request of VUMC and to not practice medicine in accordance with this VUMC/VU contract even though

he retained his privileges with the VUMC main Hospital which had never been limited or revoked. Dr. Hoedt was doing everything possible to save his career, which would have been ruined had his privileges been revoked at VWCH and that revocation permanently displayed on the National Practitioner Data Bank upon it becoming final.

35.     VUMC was not interested in whether Dr. Hoedt was a competent surgeon because that was not the reason they wanted to remove him from his employment and the VU faculty. The proctoring arrangement set up by VUMC was a sham. Dr. Hoedt was not asked or allowed to demonstrate his surgical abilities because all he did was watch the surgeries performed by his proctors. As previously referenced, Dr. Hoedt was being removed from his VUMC/VU positions because of his refusal to be a "team player" in connection with the use of DJO prosthetic devices. Thus, Dr. Hoedt was placed under serious duress under Tennessee law by the actions of VUMC principally through Wright and Polkowski. In making false accusations against Dr. Hoedt to obtain a summary suspension of his privileges by the Hospital, wherein neither had privileges, Drs. Wright and Polkowski manufactured allegations about infections and complications and falsely claimed that the VUMC Department of Orthopaedic Surgery had attempted remediation of Dr. Hoedt's alleged deficiencies. This was all done to obtain a vote from the Hospital's Medical Executive Committee to revoke Dr. Hoedt's privileges that would have enabled VUMC, Wright and Polkowski to terminate Dr. Hoedt's VUMC/VU Employment Agreement.

36.     Dr. Hoedt successfully completed the proctoring arrangement in approximately two weeks and on October 2, 2022, his summary suspension was vacated by VWCH's Medical Executive Committee, the same entity that imposed it on March 17, 2022. During the proctoring Dr. Hoedt witnessed several doctors in VUMC's Department of Orthopaedic Surgery use Hydrogen Peroxide in the same manner he had used it and in a manner that Dr. Wright had claimed

was a gross deviation from the standard of care. Attached to the original Complaint as Exhibit 3 is the notification sent by VWCH of the vacation of the summary suspension and the reinstatement of Dr. Hoedt's hospital privileges. There never was a Hearing and Dr. Hoedt's hospital privileges were reinstated and never revoked.

37.     On July 15, 2022, during the events referenced above, Dr. Hoedt pursued his rights under his faculty employment with VU, as set forth in its Faculty Handbook. The Faculty Handbook is part of the employment agreement between Dr. Hoedt and VU.

38.     VU breached its agreement by failing to follow its Faculty Handbook and after being fully informed of the unethical and fraudulent behavior of Wright and Polkowski, including the blatant violation of VU's policies, VU never investigated Dr. Hoedt's complaints and erroneously concluded his complaint was not timely on December 8, 2022.

## NATIONAL PRACTITIONER DATA BANK

39.     During this process VUMC/VWCH filed reports with the National Practitioner Data Bank ("NPDB"), a reporting entity created by the federal Healthcare Quality Improvement Act (HCQIA) and regulated by HHS. HHS, through HCQIA, has created an administrative procedure to challenge reports and promulgated Regulations and developed a Guidebook to address the issues surrounding the disputes of these reports.

40.     The NPDB Guidelines require practitioners who dispute reports from reporting entities to engage in discussions to resolve the dispute and cannot avail themselves of the NPDB dispute resolution process for 60 days in order to have these discussions. Dr. Hoedt immediately after having his privileges restored on October 2, 2022, attempted to communicate with VUMC/VWCH counsel about the analysis of why the Guidelines required a void of these reports. Information was obtained from the NPDB supporting this position, yet counsel refused to respond.

The mediator selected by VUMC/VWCH counsel was reengaged and he likewise could never get a response. Dr. Hoedt then challenged these reports administratively through the dispute resolution process on the only grounds the NPDB can address. These grounds only pertain to whether the actions are reportable and whether they are accurate as to what occurred. The NPDB does not through this administrative process address the underlying medical issues that gave rise to the reports. This complaint addresses both.

41.     Administratively, Dr. Hoedt challenged the NPDB reports submitted on behalf of VWCH, the reporting entity. He has exhausted his administrative remedies. The grounds for the administrative challenge were that the reports were required to be voided or the events were not reportable. This position was inappropriately rejected by HHS under its regulations and Guidelines.

42.     The following are the relevant provisions of the NPDB Guidelines that apply to the facts of this case:

> Clinical privileges actions are reportable once they are made final by the health care entity. However, summary suspensions lasting more than 30 days are reportable *even if* they are not final.
>
> If the authorized hospital committee or body vacates the summary suspension, the entity must void the previous report submitted to the NPDB.
>
> If, as a result of a professional review action related to professional competence or conduct, a proctor is required in order for a physician or dentist to proceed in freely exercising clinical privileges, and the period lasts longer than 30 days, the action must be reported to the NPDB. In other words, if, for a period lasting more than 30 days, the physician or dentist cannot perform certain procedures without proctor approval or without the proctor being present and watching the physician or dentist, the action constitutes a restriction of clinical privileges and must be reported.

43. On July 8, 2022, after the failed mediation, VWCH as the reporting entity submitted the following report:

> Dr. Hoedt's clinical privileges and medical staff membership with Vanderbilt Wilson County Hospital were suspended for concerns regarding his clinical performance including an increased volume of surgical site infections and patient safety, selection, and management. The MEC continued the suspension and made a recommendation for the revocation of Dr. Hoedt's clinical privileges. Dr. Hoedt timely requested a fair hearing to challenge the bases of the suspension and recommendation for revocation. The fair hearing proceedings are pending scheduling.

44. In its letter of August 18, 2023, to the NPDB in connection with Dr. Hoedt's dispute of the reports filed by VWCH, the hospital acknowledged that the summary suspension imposed by its MEC on March 17, 2022, was not due to "concerns regarding his clinical performance including an increased volume of surgical site infections and patient safety, selection, and management" but rather it was imposed "following the death of one of his patients." In that same letter VWCH stated that its MEC voted to recommend revocation of his privileges due to his overall "clinical performance." This report to the NPDB is wrong on two grounds: 1) It is factually inaccurate as to the reason for the summary suspension and; 2) The vote to recommend a revocation of privileges is not reportable since there was never a final determination to revoke his privileges. In fact, his summary suspension was vacated and his privileges were restored on October 2, 2022. The only thing reportable on July 8, 2022 was the fact that the summary suspension over the death of his patient had lasted more than 30 days. The summary suspension lasted more than 30 days due to VWCH not complying with the time limitations in its own bylaws.

45. The next report to the NPDB came about on September 12, 2022, as a result of the agreement to a proctoring arrangement for Dr. Hoedt to demonstrate his competence, which reads as follows:

Dr. Hoedt perfected his right to a fair hearing to challenge the bases for the prior adverse action and recommendations of the Vanderbilt Wilson County Medical Executive Committee: facts remain in dispute as to those bases. Dr. Hoedt exercised his due process rights by participating in mediation which resulted in the hospital requiring an agreed upon proctoring program at Vanderbilt University Medical Center to take place between September 26, 2022 and March 16, 2023.

46.     At the time of the Settlement Agreement (Ex. 2) that led to this report it was unknown how long the proctoring arrangement would last. Dr. Hoedt was being deployed as a surgeon with the United States Army in early October and it was unclear if the proctoring could be finished before his deployment. As it turned out the proctoring lasted around two weeks and the summary suspension was vacated on October 2, 2022, (Ex. 3) along with the vacation of the MEC's recommendation for the revocation of his privileges. Therefore, the proctoring event was not reportable and should be voided.

47.     Because the MEC vacated the summary suspension and restored Dr. Hoedt's privileges on October 2, 2022, (Ex. 3) the July 8, 2022, report concerning the summary suspension "must" be voided under the Guidelines.

48.     The final report filed December 9, 2022, reflects the successful completion of proctoring and the reinstatement of Dr. Hoedt's privileges. This report should be unnecessary with the voiding of the two prior reports. While this report reveals a favorable outcome it still references, as do all of the reports, the "Basis for Initial Action" as "Inadequate and Improper Infection Control Practices" and "Substandard or Inadequate Care." These reports are defamatory, not based on valid facts or medical analysis, and are damaging to Dr. Hoedt's career.

49.     In addition to the administrative Guidelines that warrant the removal of these reports, they should be removed because the underlying peer review was conducted with malice, in bad faith, and for ulterior motives. The summary suspension was unsupportable medically and

Dr. Wright's role in causing it to occur was tortious and in breach of Dr. Hoedt's contract with VU/VUMC.

## VUMC BREACH OF CONTRACT

50.     The actions of Drs. Wright and Polkowski were a direct breach of Dr. Hoedt's contract with VUMC. Dr. Wright's actions in intentionally misrepresenting to the Chief of Staff at VWCH that Dr. Hoedt's performance of the surgery on a patient who died on March 16, 2022, was "a gross deviation from the standard of care," was a violation of his employment agreement. Likewise, his representation that Dr. Hoedt's surgery in any way was related to the patient's death two days thereafter was intentionally false because it is medically impossible for what Dr. Wright claimed to have been a "gross deviation from the standard of care" to have caused or contributed to that death. Moreover, based upon subsequent events wherein Dr. Hoedt was proctored per the Settlement Agreement it was learned that the very actions that Dr. Wright claimed to have been a "gross deviation of the standard of care," namely the use of hydrogen peroxide in wound remediation surgery, was routinely performed by physicians in the Vanderbilt Department of Othopaedic Surgery over which Wright was the Chair.

51.     Dr. Wright's involvement in the VWCH peer review was outside the scope of his duties as the Chair of the VUMC Department of Orthopaedic Surgery. First, he did not himself have privileges at VWCH. Second, he was not performing the type of procedure Dr. Hoedt performed that he fraudulently criticized. Dr. Wright wrongfully inserted himself into this process for ulterior motives as set forth below.

52.     In addition to the intentional misrepresentation concerning Dr. Hoedt's patient who tragically died under the care of other physicians, Drs. Wright and/or Polkowski intentionally misrepresented Dr. Hoedt's medical complications from the surgeries he had performed. In making

those misrepresentations they also intentionally misrepresented to the VWCH Medical Executive Committee that issues surrounding the alleged concerns about Dr. Hoedt's surgical complications had been addressed with Dr. Hoedt and VUMC's efforts to remediate the problems causing these complications was unsuccessful. That never happened and they knew it never happened, but yet in an attempt to have Dr. Hoedt's privileges revoked at VWCH this intentional misrepresentation was made to get the hospital's MEC to vote to recommend the revocation of Dr. Hoedt's privileges.

53.     The actions causing this breach of contract began as a result of Dr. Polkowski's, and other orthopaedic surgeons within the department of Orthopaedic Surgery at VUMC, breach of their own contracts by accepting gifts and illegal entertainment from the manufacturer's representative for the DJO medical devices. Dr. Hoedt was asked to "be a team player" in accepting gifts and using this company's devices, which directly benefited Dr. Polkowski and others within the department. Dr. Hoedt refused to go along with the urgings of Dr. Polkowski since it would have violated his contract with VU/VUMC. That contract (Exh. 1) provided that Dr. Hoedt would be bound by various university policies that included a Conflict of Interest Policy. Those policies would also apply to Dr. Polkowski and others in the department who were involved with the DJO medical device representative. Specifically, in the Conflict of Interest Policy the following is found:

> NO GIFTS, of any amount, may be accepted by individuals from suppliers of pharmaceuticals, medical equipment and devices, or medical service vendors (hereafter referred to as the Health Care Industry) or their agents. This includes, but is not limited to, companies currently engaged in or proposing to do business with Vanderbilt, a list of which is provided at this link. One exception to this is funds from Health Care Industry sources given as unrestricted gifts towards meals and refreshments at on-campus, regularly scheduled meetings, which further the operational unit's missions, and which are elected to be used by department chairs, division chiefs, center directors, institute directors, and CEOs (or their designees) for this purpose. These gifts are normally tax exempt, and

as such may only be accepted through the VUMC Development Office.

54.     Because Dr. Hoedt would not be a "team player" that would have led to the direct violation of the foregoing policy, it was determined by Drs. Wright and Polkowski that he needed to go. He was thus informed that his contract would not be renewed and pressured by Dr. Polkowski to get another job. Since Dr. Hoedt's contract was not going to expire for another year and four months, Drs. Wright and Polkowski decided to hasten the process by having Dr. Hoedt's privileges at VWCH suspended and then revoked. This would allow the operation of the following clause within Dr. Hoedt's contract:

> Should your clinical practice privileges be restricted or terminated as a result of a disciplinary process under the VUMC Medical Staff Bylaws or by similar process of any other location where you practice, the dean/CEO may elect in your faculty appointment and employment by VUMC.

Dr. Wright was the dean who would have rights to terminate the contract under that clause. Additionally, the contract provided that Dr. Hoedt's duties at VWCH under his job description in the contract required him to "maintain active privileges at the hospital."

55.     All contracts under Tennessee law require parties to perform in good faith. Manufacturing a breach of the contract through intentional falsehoods in order to terminate the contract is bad faith. The conduct of Drs. Wright and Polkowski went beyond a breach of contract and represented fraud for which punitive damages should be awarded. Their intentional misconduct designed to achieve the goal of terminating Dr. Hoedt's VU/VUMC contract was done with the total disregard of the real prospect that their actions would destroy Dr. Hoedt's career.

## VU BREACH OF CONTRACT

56.     Attached to the original complaint as Exhibit 4 is a copy of VU's Faculty Handbook that formed a part of VU's employment contract with Dr. Hoedt.

57. On July 15, 2022, during the events referenced above, Dr. Hoedt pursued his rights under his faculty employment with VU, as set forth in its Faculty Handbook. The Faculty Handbook is part of the employment agreement between Dr. Hoedt and VU.

58. Specifically, On July 15, 2022, Dr. Hoedt filed his written Grievance pursuant to Part IV: Disciplinary Actions and Grievances, Chapter 2: Faculty Grievances, Section B: Grievances Other Than Those Arising From Reappointment, Tenure, and Promotion Decisions. The Grievance fully informed the ad hoc committee of the unethical and fraudulent behavior of Wright and Polkowski, including the blatant violation of VU's policies.

59. Pursuant to Part IV: Disciplinary Actions and Grievances, Chapter 2: Faculty Grievances, Section B provides that when the grievant:

> …believes that the University has breached an obligation owed to the faculty member, including but not limited to an obligation to adhere to: (a) express or implied terms of a faculty member's contract, including relevant portions of the Faculty Manual; (b) commonly accepted norms of professional responsibility and academic freedom; (c) stated or commonly understood standards of fair and reasonable procedures; and (d) the University's nondiscrimination and Sexual Misconduct policies (other than those that are subject to the Formal Grievance Protocol).

Exhibit 4, Page 80.

60. Dr. Hoedt was in continuous contact with various members VU's faculty committees beginning in March of 2022. It was not until the failed mediation on June 23, 2022, that Dr. Hoedt became aware of the lengths VUMC, Wright, and Polkowski were going to ruin his career. The mediation was supposed to be about working out a proctoring arrangement as recognized by the VWCH by-laws but due to misrepresentations made by VUMC through its counsel, VUMC insisted that the only resolution acceptable to it was for Dr. Hoedt to resign his privileges. Had he done so it would have been career ending. The Manual provides that "[i]f a faculty member chooses to file a formal grievance, the grievance must be transmitted in writing to

the chair of the Grievances Committee within sixty days after the grievant becomes aware of the action forming the basis of the grievance." Exhibit 4, Page 80. Dr. Hoedt's written grievance submitted July 15, 2022, was timely following the failed mediation.

61.     Lengthy written and oral complaints were submitted through November of 2022, while the unethical and fraudulent behavior of Wright and Polkowski and the blatant violation of VU's policies remained ongoing the entire time. Specifically, the investigation into the improper summary suspension and efforts to have Dr. Hoedt's VWCH hospital privileges revoked to obtain a termination of his VUMC employment and VU faculty appointment were still ongoing. Added to these allegations was an additional Grievance sent by Dr. Hoedt's legal counsel while Dr. Hoedt was deployed overseas with the United States Army dated November 21, 2022.

62.     In addition to the personal Grievance submitted by Dr. Hoedt, his written submissions on July 15, 2022 and November 21, 2022, constituted allegations against Wright and Polkowski of serious misconduct under Part IV Chapter 1 of the Faculty Handbook pertaining to Disciplinary Actions. Allegations of misconduct within that section of the Handbook are not subject to any time constraints. Exhibit 4, pages 72-77. The allegations in Dr. Hoedt's Grievance reflected "gross personal misconduct" and "conduct employing unlawful means to obstruct the orderly functioning of the University or Vanderbilt University Medical Center or to violate the rights of other members of the University or Vanderbilt University Medical Center." Exhibit 4, page 72.

63.     Dr. Hoedt's Grievance was finally addressed by the committee in December 2022. Instead of performing any investigation during this lengthy period of time, the VU faculty committee dismissed Dr. Hoedt's complaints as being untimely, in violation of the policies and procedures outlined in VU's Faculty Handbook.

64. The ad hoc committee erroneously interpreted the Faculty Handbook in an obvious effort to sweep the egregious behavior of Wright, Polkowski, and others on the faculty of the Vanderbilt School of Medicine under the rug. As such it was a breach of VU's employment contract with Dr. Hoedt. Had VU acted appropriately upon Dr. Hoedt's original Grievance and the amendment to the additional Grievance sent on November 21, 2022, this process would have been halted and the NPDB issues that still exist and are part of this complaint would have been resolved.

## INDUCEMENT TO BREACH CONTRACT

65. The foregoing facts reflect an inducement of VWCH's MEC by Wright and Polkowski to breach VWCH's contract with Dr. Hoedt by having it wrongfully summarily suspend and pursue the revocation of Dr. Hoedt's privileges.

66. At the time of the events in question, neither Wright nor Polkowski held any position with VWCH, including having privileges themselves at that hospital. However, due to their positions with VUMC, the owner of VWCH, they inserted themselves into the process and caused the actions taken by the hospital's MEC against Dr. Hoedt for the ulterior motive to terminate Dr. Hoedt's VU/VUMC contract. These actions caused Dr. Hoedt to incur damages, including attorney's fees and expert witness fees necessary to defend himself and avoid the destruction of his medical career.

67. Pursuant to the provisions of T.C.A. § 47-50-109 Dr. Hoedt is entitled to treble damages against these Defendants.

## BREACH OF THE SETTLEMENT AGREEMENT

68. The Settlement Agreement (Exh. 2) entered into that led to the proctoring arrangement, the vacation of the summary suspension and the withdrawal of the request to revoke Dr. Hoedt's VWCH hospital privileges, contained a non-disparagement provision. It also contained

a provision that "minimal language," which included dates of privileges, dates of proctoring, referral to revised NPDB report, would be used in response to any credentialing entity concerning Dr. Hoedt's medical staff privileges.

69.     Since the reinstatement of his privileges at VWCH Dr. Hoedt has been trying to find employment where he can further his career following his years of training as an orthopaedic surgeon specializing in joint replacements. Dr. Hoedt had success in obtaining interviews and on a number of occasions had written contracts drafted for his employment and oral offers made just to have them rescinded following conversations with orthopaedic surgeons at VUMC. On some of those occasions he was specifically informed that comments from Drs. Wrights and Polkowski were such that the potential employers did not want to enter into an employment arrangement with him. It is clear from these circumstances that Drs. Wright and Polkowski and perhaps others within the VUMC Department of Orthopaedic Surgery had violated the terms of this Settlement Agreement and discovery will bear that out.

70.     Based upon the defamatory statements made by Drs. Wright and Polkowski and perhaps others within VUMC Department of Orthopaedic Surgery, Dr. Hoedt has been damaged and was unable to obtain employment for a significant period of time. Further upon information and belief the defamatory statements made were false and done with the malicious intent to damage his reputation and ruin his career.

71.     The Settlement Agreement provides for the provision for the recovery of attorney's fees should a party breach its terms, of which VUMC is guilty. Further, any preclusion of bringing litigation arising from the events giving rise to this action is not barred by the Settlement Agreement upon the breach of VUMC.

## VIOLATION OF APA, 5 U.S.C. §706(2)(A)

72.     HHS is an agency subject to the requirements of the APA. 5 U.S.C. § 701(b)(1).

73.     The APA allows a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to see judicial review of that action. 5 U.S.C. § 702.

74.     Under the APA, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed," and "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5. U.S.C. § 706 (1) & (2).

75.     Federal regulations promulgated in accordance with the HCQIA "establish procedures to enable individuals … to dispute the accuracy of NPDB information." 45 C.F.R. § 60.2.

76.     Under those regulations, a physician who is the subject of a report can seek Secretarial review of the report. 45 C.F.R. § 60.21. Dr. Hoedt sought Secretarial review of the VUMC/VWCH reports. HHS issued a decision denying Dr. Hoedt's request. Dr. Hoedt petitioned HHS to reconsider, which was also denied. Dr. Hoedt was informed that he has exhausted his administrative remedies.

77.     HHS's refusal to remove these reports was arbitrary and capricious and violates the APA.

## DAMAGES

78.     As a direct and proximate result of one or more of the above acts of fraudulent conduct, breach of contract, inducement to breach contract, breach of a settlement agreement, and

violations of federal law, Dr. Hoedt suffered damages, including but not limited to, loss of income, loss of employment opportunities, damages to his reputation, and attorneys' fees.

79.     To this day the false reports submitted to the National Practitioner Data Bank have not been removed, in direct violation of the National Practitioner Data Bank Guidebook and Regulations. As such, Dr. Hoedt's damages are ongoing.

## PRAYER FOR RELIEF

1.     Dr. Hoedt requests this honorable court grant a temporary injunction requiring a void of the reports submitted to the National Practitioner Data Bank and that the temporary injunction become final following a hearing or an appropriate motion.

2.     Dr. Hoedt requests that this Court grant him a monetary judgment in an amount to be proven at trial but at least in excess of One Hundred Thousand Dollars ($100,000.00).

3.     Dr. Hoedt seeks punitive damages as a result of the intentional misconduct of Drs. Wright and Polkowski of One Million Dollars ($1,000,000.00).

4.     Dr. Hoedt asks for his attorney's fees incurred as a result of the breach of the Settlement Agreement as provided herein.

5.     Dr. Hoedt asks the Court to declare that HHS's refusal to remove the NPDB reports violates the National Practitioner Data Bank Guidebook and Regulations and order HHS to void the reports as required by its Regulations.

6.     Dr. Hoedt requests a Jury Trial for all matters that are properly decided by a jury.

7.     Dr. Hoedt requests what further relief is available under the facts and law applicable to this matter.

Respectfully submitted,


*s/ C. Bennett Harrison, Jr.*
C. Bennett Harrison, Jr.       (5702)
Victoria L. Rohloff            (40310)
CORNELIUS & COLLINS, LLP
211 Athens Way, Suite 200
Nashville, TN 37228
(615) 244-1440


*s/ Patrick Shea Callahan*
Patrick Shea Callahan (29086)
CALLAHAN & BINKLEY, PLC
321 E. Spring Street
Suite 304
Cookeville, TN 38501

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and exact copy of the foregoing Amended Complaint has been served via U.S. Mail and/or the Court's CM/ECF system to the following on this 6th day of May 2024:

| | |
|---|---|
| Kevin c. Klein<br>Callie J. Jennings<br>Klein, Solomon Mills, PLLC<br>1322 Fourth Avenue North<br>Nashville, TN 37208<br>kevin.klein@kleinpllc.com<br>callie.jennings@kleinpllc.com<br><br>*Attorneys for Defendant The Vanderbilt University* | Thomas Wiseman, III<br>Wiseman Ashworth Trauger<br>511 Union Street, suite 800<br>Nashville, TN 37219-1743<br>tom@watlawgroup.com<br><br>Yvonne K. Puig<br>Daphne Andritsos Calderon<br>Norton Rose Fulbright, US LLP<br>98 San Jacinto Blvd., Suite 1100<br>Austin, TX 78701<br>yvonne.puig@nortonrosefulbright.com<br>daphne.calderon@notronrosefulbright.com<br><br>*Attorneys for Defendants VUMC, VWCH, Dr. Wright and Dr. Polkowski* |
| Department of Health and Human Services<br>Attn: Henry C. Leventis<br>719 Church Street, Suite 3300<br>Nashville, TN 37203 | Department of Health and Human Services<br>Attn: Merrick B. Garland<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |
| Xavier Becerra, in his official Capacity as Secretary, United States Department of Health and Human Services<br>Attn: Henry C. Leventis<br>719 Church Street, Suite 3300<br>Nashville, TN 37203 | Xavier Becerra, in his official Capacity as Secretary, United States Department of Health and Human Services<br>Attn: Merrick B. Garland<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |

                                      *s/ C. Bennett Harrison, Jr.*
                                      C. Bennett Harrison